NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SYNCHRONOSS TECHNOLOGIES, INC., | CIVIL ACTION NO. 15-2845 (MLC) |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| HYPERLYNC TECHNOLOGIES, INC., | |
| Defendant. | |

**COOPER, District Judge**

**I.     Introduction**

The plaintiff, Synchronoss Technologies, Inc. ("Synchronoss"), holds the three patents that are in issue ("Patents In Issue") in this action.  (See dkt. 1 at 3.)

The Patents In Issue address: (1) "synchronization and data backup technology that allows users to store and back up documents across multiple electronic devices", in the words of the defendant, Hyperlync Technologies, Inc. ("Hyperlync"); or (2) "synchronization of data between devices such as hardware components of a computer system, personal information devices (smart phones), hand-held computers, and laptops that are connected to a computer network such as the Internet", in the words of

Synchronoss. (Dkt. 13-1 at 5; dkt. 17 at 7–8.)[1] Synchronization concerns "matching up one set of data to another". (Dkt. 13-1 at 5.) Synchronoss asserts that Hyperlync is infringing the Patents In Issue.

Hyperlync has now filed a motion pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss the complaint ("Motion to Dismiss") on the grounds of invalidity pursuant to 35 U.S.C. § 101 ("Section 101"). (See dkt. 13; dkt. 13-1; dkt. 20; dkt. 20-1 through dkt. 20-7; dkt. 22.) The plaintiff opposes the Motion to Dismiss. (See dkt. 17; dkt. 17-1; dkt. 21; dkt. 21-1; dkt. 24.) It appears to be immaterial that Hyperlync moved pursuant to Rule 12(b)(6), as opposed to Rule 12(c). See generally Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC, No. 15-1411, 2015 WL 9461707, at *2 (Fed.Cir. Dec. 28, 2015); Anderson v. Kimberly-Clark Corp., 570 Fed.Appx. 927, 931 (Fed.Cir. 2014); Merck & Co., Inc. v. Hi-Tech Pharmacal Co., Inc., 482 F.3d 1317, 1320 (Fed.Cir. 2007).

The Court will resolve the Motion to Dismiss upon review of the papers and without oral argument. See L.Civ.R. 78.1(b). The Court presumes the familiarity of the parties with the factual context and procedural history of this action. For the following reasons, the Court will deny the Motion to Dismiss without prejudice.

---

[1] The courts no longer need to explain the nature of these types of devices. See, e.g., Am. Broad. Cos., Inc. v. Aereo, Inc., 134 S.Ct. 2498, 2503 (2014) (discussing services provided to users of personal computers, tablets, and smart phones).

## II. The Guiding Law

### A. 35 U.S.C. § 101

The relevant statute here is Section 101. It states:

Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

### B. Relevant Case Law

An abstract idea is not patentable, and a proposed patent claim that "merely requir[es] generic computer implementation fails to transform that abstract idea into a patent-eligible invention" under Section 101. Alice Corp. Pty. Ltd. v. CLS Bank Int'l, 134 S.Ct. 2347, 2352 (2014); see id. at 2354 (stating courts must refrain from upholding a patent that "would pre-empt use of [an] approach in all fields, and would effectively grant a monopoly over an abstract idea" (citation and quotation marks omitted)).

A court must engage in a two-step process when assessing whether an invention is patent-eligible:

> First, we determine whether the claims at issue are directed to one of the patent-ineligible concepts—laws of nature, natural phenomena, or abstract ideas. . . . If we determine that the patent is drawn to an abstract idea or otherwise ineligible subject matter, at a second step we ask whether the remaining elements, either in isolation or combination with the non-patent-ineligible elements, are sufficient to transform the nature of the

claim into a patent-eligible application. Put another way, there must be an inventive concept to take the claim into the realm of patent-eligibility.

Intellectual Ventures I LLC v. Capital One Bank (USA), 792 F.3d 1363, 1366–67 (Fed.Cir. 2015) (citations, brackets, and quotation marks omitted).

Thus, "the elements of the claim [must be examined] to determine whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application". Alice Corp. Pty. Ltd, 134 S.Ct. at 2357 (citation and quotation marks omitted).

Although a district court may engage in claim construction in these types of actions, it is not necessarily required if a motion to dismiss sets forth issues that are "straightforward" or where "[n]o components are opaque such that claim construction would be necessary to flush out its contours". Lumen View Tech. LLC v. Findthebest.com, Inc., 984 F.Supp.2d 189, 205 (S.D.N.Y. 2013).

**III.   Patents In Issue**

Hyperlync directs its arguments to certain claims within the Patents In Issue.

**A.   United States Patent No. 6,671,757 ("the '757 Patent")**

The '757 Patent is entitled "Data Transfer and Synchronization System". Claim 1, which Hyperlync argues is representative of the other claims in the '757 Patent (see dkt. 13-1 at 13, 21), states:

> 1.   A system for synchronizing data between a first system and a second system, comprising:

>   a first sync engine on the first system interfacing with data
>     on the first system to provide difference information in
>     a difference transaction;
>   a data store coupled to the network and in communication
>     with the first and second systems; and
>   a second sync engine on the second system coupled to
>     receive the difference information in the difference
>     transaction from the data store via the network, and
>     interfacing with data on the second system to update
>     said data on the second system with said difference
>     information;
>   wherein each said sync engine comprises a data interface,
>     a copy of a previous state of said data, and a difference
>     transaction generator.

(Dkt. 1-1 at 39–40.)

      **B.**    **United States Patent No. 7,587,446 ("the '446 Patent")**

The '446 Patent is entitled "Acquisition and Synchronization of Digital Media to a Personal Information Space". Claim 1, which Hyperlync argues is representative of the other claims in the '446 Patent (<u>see</u> dkt. 13-1 at 23, 28), states:

> 1.    A method of transferring media data to a network coupled apparatus, comprising:
> (a)    maintaining a personal information space identified with a user including media data comprising a directory of digital media files, the personal information space being coupled to a server and a network;
> (b)    generating a first version of the media data in the personal information space;

>   (c)   generating a digital media file, in response to an input from the user, comprising a second version of the media data in a same format as the first version in the personal information space, the second version including an update not included in the first version;
>   (d)   obtaining difference information comprising differences between the first version of the media data and the second version of the media data; and
>   (e)   transferring a digital media file over the network containing the difference information from the personal information space to the network coupled apparatus in response to a sync request made from a web browser at the network-coupled apparatus by the user.

(Dkt. 1-2 at 16.)

The '446 Patent incorporates the '757 Patent. (See id. at 10, 12.)

### C.   United States Patent No. 7,643,824 ("the '824 Patent")

The '824 Patent is entitled "Wireless Telephone Data Backup System". Claim 1, which Hyperlync argues is representative of the other claims in the '824 Patent (see dkt. 13-1 at 29, 33), states:

>   1.   A method implemented by a processing device on a wireless telephone for backing up personal information stored in the telephone, comprising:
>       presenting a back-up system user account set-up interface on a user interface on the phone, the set-up interface enabling establishment of a back-up service account;
>       presenting a backup scheduling interface to the user interface on the phone, the backup scheduling interface

>   accepting user input on a backup schedule; and
>
>   presenting a restore information interface on the user interface on the phone, the restore interface enabling a user to retrieve backup information to a data store on the phone.

(Dkt. 1-3 at 26.)

The '824 Patent contains several references to the '757 Patent. (See dkt. 1-3 at 21, 22, 24, 25.)

## IV. Arguments of the Parties

Hyperlync argues that the Patents In Issue concern abstract ideas that have not been transformed into inventive concepts. (See dkt. 13-1 at 7.) Synchronoss argues in opposition that the Patents In Issue address "a synchronization system" that is "faster, used less bandwidth for the transmission, used less storage, and did not need for the devices to be directly connected", and the "devices . . . did not need to be aware of each other's data format". (Dkt. 17 at 9.) Synchronoss also argues that the Patents In Issue provide the explicit details as to how to produce the claimed systems, with instructions delving into the fields of electrical engineering and computer science. (See id. at 11–13.)

## V. Analysis

The parties do not appear to agree on how certain key terms contained in the Patents In Issue should be construed, and thus the Court cannot address at this juncture whether "every possible plausible construction of each of the . . . claims asserted . . . render the patent ineligible". A Pty Ltd. v. Google, Inc., No. 15-157, 2015 WL 5883354,

at *6 (denying motion to dismiss in a dispute concerning a patent for a method for conveying email messages, wherein the email message includes an address field that is different from the unique address of the recipient of the email message).  For instance, Hyperlync suggests that the "sync engine" described in the Patents In Issue is "just a generic piece of software that can analyze edits in a document and update a document with the edits".  (Dkt. 13-1 at 19.)  However, Synchronoss argues that the "sync engine" comprises "a data interface, a copy of the previous state of data in the system (*e.g.*, a home PC) and a difference transaction generator".  (Dkt. 17 at 21; see also dkt. 21-1 at 7 n.3 (stating "sync engine" has "specific meaning in the field").)  The parties also do not appear to agree on the meaning of the term "difference information".  (Compare dkt. 17 at 22, with dkt. 20 at 6–7, 9.)

     Even Synchronoss concedes that claim construction may be necessary in this dispute.  (See dkt. 17 at 31 n.4; see also dkt. 21-1 at 10 ("what these terms mean (or do not mean) is an issue for claim construction").)  Thus, the Court is constrained to deny the Motion to Dismiss for this reason alone.  See WAG Acquisition, LLC v. Multi-Media, LLC, No. 14-2340, 2015 WL 5310203, at *6 (D.N.J. Sept. 10, 2015) (denying motion to dismiss in a patent dispute, because "the parties vigorously dispute the basic character and meaning of the claims"); Data Distrib. Techs., LLC v. BRER Affiliates, Inc., No. 12-4878, 2014 WL 4162765, at *8 (D.N.J. Aug. 19, 2014) (denying motion to dismiss in a patent dispute, where "the parties have not agreed about claim constructions, in contrast

to some of the core precedents regarding § 101 eligibility . . . in which there were no disputes about claim construction"). The Court cannot determine at this point whether the Patents In Issue are directed at abstract ideas and, if so, whether they assert inventive concepts to render them patent-eligible. See A Pty Ltd., 2015 WL 5883354, at *6.

Furthermore, a dispute concerning the area of technology addressed in the Patents In Issue is not conducive to a resolution on a motion to dismiss at the initial stages of litigation. In a dispute concerning similar technology, another district court observed that hearings for claim construction were necessary. See Open Text, S.A. v. Box, Inc., 36 F.Supp.3d 885, 893–900 (N.D. Cal. 2014) (denying motion for preliminary injunction in a dispute concerning patents addressing the synchronization of electronic files being accessed by different users); see also Open Text, S.A. v. Box, Inc., No. 13-4910, 2014 WL 6766018, at *1 (N.D. Cal. Dec. 1, 2014) (concerning the first hearing for claim construction subsequently conducted by the district court), and Open Text, S.A. v. Box, Inc., No. 13-4910, 2015 WL 400348, at *1 (N.D. Cal. Jan. 28, 2015) (concerning the second hearing for claim construction conducted by the district court). Indeed, in Tranxition, Inc. v. Lenovo (United States) Inc., No. 12-1065, 2015 WL 4203469 (D. Or. July 9, 2015), a case cited repeatedly by Hyperlync in support of the Motion to Dismiss (see dkt. 18 at 5–7, 15), the district court therein conducted hearings for claim construction. See id. at *7 n.2., *9, *11 n.4.

The Patent Trial and Appeal Board ("PTAB"), in addressing similar technology in a petition for inter partes review ("IPR") of certain patents, engaged in extensive claim construction and analysis before addressing whether the patent claims at issue were not patentable. See Unified Patents, Inc. v. Clouding IP, LLC, No. 2013-00586 & No. 2014-00306, 2015 WL 1406894, at *1–23 (P.T.A.B. Mar. 19, 2015) (concerning the synchronization of electronic data files through the insertion of a new segment of the current version of the file, wherein the new segment of the current version of the file is written into the update and the unchanged segment is excluded from the update). That PTAB decision is now the subject of an appeal before the United States Court of Appeals for the Federal Circuit. See Clouding Corp. v. Unified Patents, Inc., Fed. Cir. No. 15-1799, dkt. 1 (Notice of Appeal). This Court would be well-advised to follow the PTAB's expert lead by refraining from addressing this dispute without the benefit of further analysis. See generally 35 U.S.C. §§ 6(b)(4), (c), 316(c) (stating PTAB conducts IPRs); 35 U.S.C. § 6(a) (acknowledging the "legal knowledge and scientific ability" of the administrative patent judges appointed to the PTAB).

An invention that is "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks" is patent-eligible if it states "how [certain] interactions . . . are manipulated to yield a desired result". DDR Holdings, LLC v. Hotels.com, L.P., 773 F.3d 1245, 1257–58 (Fed.Cir. 2014). But the Court cannot make such a determination here without the benefit of claim construction.

## VI. Conclusion

The Court will deny the Motion to Dismiss without prejudice. The Court will issue an appropriate order.

 s/ Mary L. Cooper  
**MARY L. COOPER**  
United States District Judge

**Dated:** March 7, 2016